

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00145-CV

IN RE MARK LEE NEWBY                                                                        RELATOR

----------

## ORIGINAL PROCEEDING

----------

## **OPINION**

----------

In this petition for writ of habeas corpus, relator Mark Lee Newby contends that the trial court's order finding him in criminal and civil contempt and committing him to the Tarrant County Jail for at least twenty-four months is void. We hold that the order is void in part and modify it as set forth below.

### **Background Facts**

The underlying case is a divorce enforcement suit. Real party in interest (RPI) Dianne Marie Uhl filed two motions for contempt and enforcement in the trial court: one relating to unpaid child support and health care insurance reimbursements and the other relating to violations of a protective order. In the

child support enforcement motion, RPI set forth sixteen alleged counts for failure to pay child support and health care premium reimbursements, alleged that relator would likely miss additional payments while the motion was pending, and asked that the trial court hold relator in both civil and criminal contempt "for a determinative period of 180 consecutive days, day to day, for *each* of his violations." [Emphasis added.]

The trial court heard both motions on March 9, 2012 and found relator guilty of missing sixteen child support payments and sixteen health care expense reimbursement payments. The trial court also found relator guilty of fifty violations of the protective order. The trial court sentenced relator to twenty-four months' confinement as criminal contempt for the violations. The trial court also ordered that relator remain incarcerated thereafter until he purged himself of civil contempt by performing the following: (1) pay RPI all confirmed child support and health care expense reimbursement arrearages in the amount of $15,426.01 (the past due amounts for all nineteen alleged failures to pay child support and all nineteen alleged failures to reimburse health care insurance expenses,[1] plus six percent statutory simple interest), (2) pay RPI's attorney $11,421 for attorney's fees incurred in prosecuting both enforcement and contempt actions (the child support and protective order), (3) timely pay each monthly payment of $1500 in

---

[1]The trial court found relator not guilty of failing to pay the first three child support payments and health care insurance reimbursement payments alleged by RPI, but it nevertheless found relator guilty of missing three payments while the motion was pending: January through March 2012.

child support as set forth in the decree beginning March 9, 2012, and (4) timely pay each monthly payment of $93.02 for the child's health care insurance beginning March 9, 2012.

Relator was committed to the Tarrant County Jail that same day. He filed this petition for writ of habeas corpus challenging the trial court's contempt order.

## Right to Trial by Jury – Criminal Contempt

In his first and second issues, relator contends that the trial court's order sentencing him to twenty-four months' confinement violated his right to a trial by jury because he did not waive that right.

Although an absolute right to trial by jury in contempt proceedings does not exist, an alleged contemnor possesses such a right in criminal contempt cases in which the punishment assessed is "serious." *See Muniz v. Hoffman*, 422 U.S. 454, 475–77, 95 S. Ct. 2178, 2190–91 (1975); *Ex parte Griffin*, 682 S.W.2d 261, 262 (Tex. 1984) (orig. proceeding); *In re McGonagill*, No. 02-07-00034-CV, 2007 WL 704888, at *2 (Tex. App.—Fort Worth Mar. 5, 2007, orig. proceeding) (mem. op.). Punishment assessed for criminal contempt beyond 180 days is considered "serious" and may not be assessed unless there was a jury trial or a jury waiver. *Ex parte Sproull*, 815 S.W.2d 250, 250 (Tex. 1991) (orig. proceeding); *McGonagill*, 2007 WL 704888, at *2. Section 21.002(b) of the Texas Government Code provides that punishment for a single act of contempt of court is a fine of not more than $500 or confinement in the county jail for not more than six months or both. Tex. Gov't Code Ann. § 21.002(b) (West 2004). Punishment

3

within these limits is characterized as "petty." *See Ex parte Werblud*, 536 S.W.2d 542, 546 (Tex. 1976) (orig. proceeding); *McGonagill*, 2007 WL 704888, at *2.

Even when the offenses are separate and the sentence for each act of contempt is less than six months, however, the alleged contemnor is nevertheless entitled to a jury trial if the sentences are aggregated to run consecutively, so as to result in punishment exceeding six months. *See Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986) (orig. proceeding); *McGonagill*, 2007 WL 704888, at *2. When there is a right to a jury trial, the record must show that the court informed the alleged contemnor of the right and that the contemnor affirmatively waived that right. *McGonagill*, 2007 WL 704888, at *2. A silent record will yield no presumption of waiver. *Sproull*, 815 S.W.2d at 250; *McGonagill*, 2007 WL 704888, at *2. A contempt sentence in excess of six months that is imposed in violation of the contemnor's right to a jury trial is void. *McGonagill*, 2007 WL 704888, at *2.

Although the order finding relator in contempt recites that relator waived his Fifth Amendment rights after being admonished, it does not state that he waived his right to trial by jury. Moreover, the reporter's record from the hearing on the contempt motions shows that although the trial court did inform relator of his right to a trial by jury, it did so midway through the hearing, after RPI had put on her evidence and immediately before relator was to testify. *See In re Jones*, No. 07-07-00202-CV, 2007 WL 1585146, at *1 (Tex. App.—Amarillo May 25, 2007, orig. proceeding and order) (concluding that, despite recitation of waiver of

4

right to jury trial in contempt order, concession by RPI that relator did not waive his right "prior to commencement of the contempt proceeding" controlled). Additionally, the trial court did not ask relator whether he specifically waived his right to trial by jury, and relator only clearly communicated his waiver of his Fifth Amendment right to testify about the child support allegations. Accordingly, we conclude and hold that the record shows that the trial court sentenced relator to greater than six months' confinement in violation of his right to a jury trial and that the criminal contempt part of the order is therefore void.[2] *See, e.g.*, *McGonagill*, 2007 WL 704888, at *2.[3] We sustain his first and second issues.

---

[2] Because relator's fourth, fifth, seventh, and eighth issues relate solely to the protective order enforcement motion (and therefore only the criminal contempt part of the trial court's order), we need not address them. *See* Tex. R. App. P. 47.1.

[3] RPI cites four cases in her response for the proposition that instead of holding that the contempt order is void, we may modify it instead so that the sentence does not exceed 180 days. *See In re Villanueva*, 56 S.W.3d 905 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding); *In re Pierre*, 50 S.W.3d 554 (Tex. App.—El Paso 2001, orig. proceeding); *In re Patillo*, 32 S.W.3d 907 (Tex. App.—Corpus Christi 2000, orig. proceeding); *Ex parte Balderas*, 804 S.W.2d 261 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). However, none of these cases controls: *Villanueva* and *Patillo* are both civil contempt cases, *Pierre* involves an improper condition of community supervision, and in *Balderas*, the trial court's written order did not conform to its oral pronouncement of sentence. *Villanueva*, 56 S.W.3d at 910; *Pierre*, 50 S.W.3d at 557–59; *Patillo*, 32 S.W.3d at 909–11; *Balderas*, 804 S.W.2d at 263–64. On June 1, 2012, relator filed a Request to Conform Contempt Order(s) and Sign Release Order(s) conceding that the criminal contempt part of the order should be modified; however, because of our disposition, we deny that request as moot.

**Civil Contempt**

Relator also challenges the coercive civil contempt part of the order on several grounds.

**Burden of proof**

Relator contends in his third issue that the trial court used a clear and convincing evidence standard to weigh the evidence instead of a beyond a reasonable doubt standard. Relator has not referred to any part of the record, and we have found none, supporting this conclusion. We overrule his third issue.

**Trial Judge's Comment**

Relator complains in his sixth issue about the trial judge's stating, "It's not the truth," in response to relator's assertion through his counsel that he had responded to discovery after RPI had presented evidence to the contrary. According to relator, the comment runs afoul of article 38.05 of the code of criminal procedure, which prohibits a judge from commenting on the weight of evidence in ruling on its admissibility. Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979). However, here, whether relator was telling the truth when he told his lawyer at the enforcement hearing that he had responded to RPI's discovery requests goes to the heart of the trial court's admissibility ruling. *See* Tex. R. Civ. P. 193.6; *White v. Perez*, No. 02-09-00251-CV, 2010 WL 87469, at *1–2 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.). Moreover, the trial judge's comments were not made before a jury who might have been influenced by the comment. *See Strong v. State*, 138 S.W.3d 546, 553 (Tex.

6

App.—Corpus Christi 2004, no pet.).   Accordingly, we overrule relator's sixth issue.

**Ability to Pay**

In his ninth issue, relator contends that he was not afforded a meaningful opportunity to explain his behavior or present defenses on his behalf.   In the argument section of his brief, he also claims that he is unable to pay the amounts the trial court ordered him to pay to purge his contempt, and he specifically complains about having to pay the entire arrearage of $15,426.01 past due child support.   Because relator never pled the affirmative defense of inability to pay in relation to the child support enforcement motion, he has failed to preserve it. *See* Tex. Fam. Code Ann. § 157.008(c) (West 2008); *In re J.M.M.*, 80 S.W.3d 232, 251 (Tex. App.—Fort Worth 2002, pet. denied), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 & n.39 (Tex. 2002).   Moreover, the trial court found that relator had either failed or refused to answer discovery, despite apparently representing to his court-appointed counsel that he had answered discovery before the trial court appointed her.   Thus, the trial court prohibited relator from presenting evidence of his inability to pay child support in the amount ordered in relation to the charges of civil contempt.   *See* Tex. R. Civ. P. 193.6; *White*, 2010 WL 87469, at *1–2 (holding that because rule of civil procedure 193.6's exclusion of evidence requirement for failure to answer discovery is automatic absent a showing of good cause or lack of prejudice, trial

7

court's imposition of such a sanction is not reviewed under *TransAmerican* analysis).[4] We overrule relator's ninth issue.

**Modification of Amount Due to Purge Civil Contempt**

In his tenth and eleventh issues, relator challenges the civil coercive contempt part of the order that requires him to pay $11,421 in attorney's fees and $15,426.01 in past due child support and health care reimbursement fees to purge himself of contempt.

RPI alleged at the hearing that relator failed to pay the following child support payments:

---

[4]The trial court did let relator produce some evidence to defend the criminal contempt charge. The trial court took judicial notice of relator's indigency in the divorce appeal (this court reversed the trial court's order sustaining a contest to relator's affidavit of indigency), and the trial court appointed counsel for the motion to enforce child support. In addition, relator testified that he was operating a business, was attending school on a grant and scholarship, that he was late on his rent, and that he was receiving food stamps. However, he also testified that $225 a month was the correct amount he should be paying for child support, even though he had only made two $225 payments (directly to RPI and not through the child support unit as ordered), in January and February 2012. In addition, RPI testified that she knew relator was receiving income from oil and gas royalties and that she had seen him driving two different Mercedes automobiles, a 2000 Buick, and a Ford Expedition since 2010. Relator testified that all of the vehicles but the Expedition had been repossessed and that he had made a down payment and two note payments on the Expedition. Finally, RPI presented evidence that relator had received a check in May 2011 for $6,000 and a check in July 2011 for $7,800 from the sale of property; relator did not explain what happened to the $7,800, and although he testified that the $6,000 was a loan which he had not repaid, the trial court was not required to believe his testimony. This case then is more akin to *In re Corder*, 332 S.W.3d 498, 502–03 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding), than *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex. 1976) (orig. proceeding).

8

- September – November 2010 $4,500 ($1,500 per month);

- December 2010 – November 2011 $2,700 ($225 per month); and

- December 2011 – March 2012 $6,000 ($1,500 per month).[5]

She also alleged that relator failed to reimburse her for the following health care insurance expenses:

- September 2010 – March 2012 $1,767.38 ($93.02 per month).

RPI also introduced evidence that the total amount of child support arrearage and health care insurance reimbursement, from September 2010 through March 2012, plus statutory simple interest of six percent, totaled $15,426.01.

The trial court held relator in contempt for failing to pay the December 2010 through March 2012 child support and health care reimbursement payments only; it found relator not guilty for failing to pay the September through November 2010 payments. However, the trial court included the September through November 2010 missed payments in the total child support and health care reimbursement arrearage that it required relator to pay to purge himself of the civil contempt. In other words, even though the trial court found relator not guilty as to those three months (September through November 2010), it nevertheless required relator to pay the entire arrearage of $15,426.01 that

---

[5]In addition to the sixteen counts specifically alleged in RPI's motion to enforce, RPI also alleged that relator was likely to miss additional payments in the future while the case was pending; relator missed the January through March 2012 payments after RPI filed her motion but before the hearing. *See* Tex. Fam. Code Ann. § 157.002(e) (West 2008).

9

included missed payments for those months to purge himself of contempt for missing the December 2010 through March 2012 payments.

Relator could have been properly subject to coercive confinement only until he paid the amount for which he was actually held in contempt, $10,188.32 ($8,700 child support plus $1,488.32 health care reimbursement).[6]  *See In re Corbett*, No. 02-11-00430-CV, 2012 WL 386744, at *2 (Tex. App.—Fort Worth Feb. 8, 2012, orig. proceeding) (mem. op.).  Thus, the trial court erred by ordering relator to pay $15,426.01 to purge himself of the civil contempt.  *See id.* Accordingly, we must decide the proper remedy for this error.

In *In re Corbett*, the trial court held the relator in contempt for twelve instances of nonpayment of child support totaling $741.66, but it ordered him to pay an arrearage of $21,835.40 to purge himself of the contempt (277 missed payments as alleged).  *Id.* at *2. In other words, in *Corbett*, as in this case, the trial court conditioned the relator's release on paying more than the amount the trial court had found the relator in contempt for failing to pay.  Instead of modifying the amount that the relator would have to pay to purge himself of the civil contempt, this court in *Corbett* voided the entire civil contempt judgment, relying on a supreme court case, *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (orig. proceeding).  *Corbett*, 2012 WL 386744, at *2.

---

[6]The decree (as recited in the contempt order) ordered that "any direct payments" of child support to RPI "are deemed in addition to and not in lieu of the support ordered in this order."

The facts in *Davila* that required voiding the entire coercive contempt part of the order in that case are slightly different than those here and in *Corbett*. In *Davila*, the Supreme Court held that when a trial court finds multiple instances of contempt, but one of those instances of contempt is invalid, and requires relator to pay a lump sum to be released for all of the instances of contempt, even the invalid one or ones, the entire order is void because the appellate court cannot tell the dollar amounts the trial court had attributed to each count of contempt. *Davila*, 718 S.W.2d at 282. What happened here and in *Corbett* is more like what happened in *In re Patillo*, 32 S.W.3d 907 (Tex. App.—Corpus Christi 2000, orig. proceeding), and *Ex parte Williams*, 866 S.W.2d 751 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). In those cases, the appellate courts modified the civil coercive contempt parts of the orders to delete the additional amounts that the relators were required to pay to purge themselves of contempt, retaining only the amounts for which the relators were actually held in contempt, because the courts were able to calculate what the purging amounts should be. *Patillo*, 32 S.W.3d at 909 ("Where a trial court lists each failure to comply with an order separately and assesses a separate punishment for each failure to comply, only the invalid portion of the contempt order is void and the remainder of the contempt order is enforceable."); *Williams*, 866 S.W.2d at 753.

Accordingly, we believe that although *Corbett* was correct in its determination that part of the civil contempt order in that case was void, we should have modified the civil contempt part of that order to reflect the amounts

11

for which the relator was actually held in contempt rather than hold the entire civil contempt part of the order void under *Davila*. *Davila* is factually distinguishable from this case; this case is more similar to *Patillo* and *Williams*, both of which rely on an exception to *Davila*.[7] Therefore, having found error, we will modify the civil coercive contempt part of the order to reflect the correct child support and health care reimbursement arrearage for which relator was actually held in contempt, $10,188.32.

**Attorney's Fees**

The attorney's fees included in the purging amount are a different matter, however. RPI's counsel testified that he earned reasonable and necessary attorney's fees of $7,352.50 for the child support enforcement and $3,610 for the protective order enforcement. He also testified that his firm had paid $491.15 in costs for the child support enforcement and $59.25 in costs for the protective order enforcement. The trial court awarded RPI a lump sum of $11,421 for "attorney[']s fees." However, that amount is greater than the two sets of attorney's fees to which RPI's counsel testified, but less than both sets of attorney's fees and costs added together. Because we are thus unable to

---

[7]The trial court's order also requires relator to pay all future accruing child support and health care reimbursement payments to purge himself of the contempt. Unlike the past due child support payments and health care reimbursements above, relator cannot be held in contempt indefinitely for failing to make future payments as they come due, and those payment orders are therefore void. *See In re Anascavage*, 131 S.W.3d 108, 112 (Tex. App.—San Antonio 2004, orig. proceeding).

determine how the trial court allocated and determined the total attorney's fees amount, this part of the civil coercive contempt order is void. *See In re Henry*, 154 S.W.3d 594, 598 (Tex. 2005) (orig. proceeding); *Davila*, 718 S.W.2d at 282. We sustain relator's tenth and eleventh issues in part, to the extent they complain about relator's being required to pay attorney's fees, future child support and health care reimbursements, and amounts for which relator was never held in contempt.

## Conclusion

Having held that the part of the trial court's order holding relator in criminal contempt and sentencing him to twenty-four months' confinement is void, we strike that part of the order. Additionally, having found that parts of the order holding relator in civil contempt and ordering him confined until he purges himself of the contempt are void, we modify the civil contempt part of the order by striking subparagraphs b through d, and we amend subparagraph a of that part of the order as follows:

> Respondent shall immediately pay to Petitioner by and through the Texas State Disbursement Unit located at P.O. Box 659791, San Antonio, Texas 78265-9791 the confirmed child support arrearages up through March 9, 2012, and the confirmed arrearages of health insurance premiums up through March 9, 2012, all together with interest thereon in the total of $10,188.32.[8]

---

[8]Relator's separate appeal from the part of the trial court's order that assesses arrearages for the child support and health care insurance remains pending in cause number 02-12-00134-CV.

13

Thus, we deny relator habeas relief regarding the remaining, civil coercive contempt part of the order as modified.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED:  June 6, 2012